## ÆTNA CASUALTY & SURETY CO. et al. v. ROBERTSON LUMBER CO. et al.

### (No. 615.)

Court of Civil Appeals of Texas. Waco. Feb. 16, 1928.

Rehearing Denied March 22, 1928.

1. **Municipal corporations** ⬚⟹347(1) — **City and contractor were without right under contract to change, without surety's knowledge, manner of paying contractor for erecting city hall.**

Where contract for erection of city hall provided that city should, as work progressed, pay 80 per cent. only of superintendent's estimates, retaining 20 per cent. until work was completed and accepted, surety and contractor were without right to change, without surety's knowledge, manner of payment of contractor because of clause in contract reserving right in city and architect to modify plans and deviate in construction without invalidating contract.

2. **Principal and surety** ⬚⟹117—**Payment by owner of contract price to contractor relieves it of further liability only where payments are in accordance with contract.**

Where payments were to be made to contractor on estimates as building progresses, payment by owner of entire contract price to contractor relieves him of further liability only where payments are made in accordance with contract's terms.

3. **Principal and surety** ⬚⟹117—**Building owner, paying contractor in violation of contract, is not relieved of liability whether duties as to payment arise under statute or contract (Rev. St. 1925, arts. 5461, 5453, § 3).**

Where building contract provided that owner was to make payments to contractor on es-

timates as building progressed, payment by owner of entire contract price to contractor did not relieve owner of liability, where he paid out full contract price in violation of contract, whether his duties as to payment arise under Rev. St. 1925, arts. 5461, 5453, § 3, or by express contract independently of mechanics' lien statutes.

**4. Municipal corporations ⊚⟹347(1)—Surety was relieved from liability on bond, where city and contractor in violation of contract, paid contractors before building was completed.**

Where contract for construction of a city hall obligated city to pay 80 per cent. of superintendent's estimates as work progressed, retaining 20 per cent. until final completion and acceptance of building, since city and contractor, without notice to city's surety, changed manner of payment, and paid contractors before building was completed practically all of amounts city should have retained, leaving bills for labor and material unpaid, surety, as to city, was relieved from liability on its bond.

**5. Municipal corporations ⊚⟹347(1)—Surety was not discharged from liability to laborers and materialmen because city made payments to contractor in violation of contract (Rev. St. 1925, art. 5160 et seq.).**

Where bond, under Rev. St. 1925, art. 5160 et seq., to secure performance of contract for building a city hall, was conditioned for payment of claims for labor and material furnished, surety was not discharged from liability to laborers and materialmen because surety made payments to contractor in violation of contract, where laborers and materialmen were without knowledge of such payments by city at time labor was performed and material furnished.

**6. Municipal corporations ⊚⟹347(1)—City's failure to comply with contract having resulted in liability of surety to laborers and materialmen, rendering judgment for surety against city therefor was proper.**

Where failure of city to comply with requirement of contract for building city hall to retain percentage of estimates made as work progressed, and hold it until building was ready for acceptance, resulted in liability of surety to laborers and materialmen and in judgment in their favor against surety, rendering judgment over for surety against city for amount of such liability was proper.

**7. Municipal corporations ⊚⟹347(1)—Allowing city credit on amount recoverable by it from surety for judgments on claims against city for materials held proper.**

Where failure of city to comply with contract for building city hall to retain percentage of estimates made as work progressed, and hold it until building was ready for acceptance, resulted in liability of surety to materialmen and judgment in their favor against surety, allowing city credit on amount recoverable from it by surety for judgments recovered against city, and by it paid on claims for material furnished contractor, was proper, where city paid them out of percentage retained.

Appeal from District Court, Limestone County; W. T. Jackson, Judge.

Action by the Robertson Lumber Company and others against the Ætna Casualty & Surety Company and others. From a judgment for plaintiffs against the defendant named, and from a judgment over for named defendant against defendant the city of Groesbeck, defendant named and defendant the City of Groesbeck appeal. Affirmed.

L. W. Shepperd, of Groesbeck, and Harry P. Lawther, of Dallas, for appellants.

Mr. & Mrs. C. S. Bradley and J. E. & B. L. Bradley, all of Groesbeck, Jas. E. Gresham, of Mexia, and Scott Reed, of Groesbeck, for appellees.

STANFORD, J. Suit by appellee Robertson Lumber Company against appellant Ætna Casualty & Surety Company, and Gregory & Hope, for material furnished to Gregory & Hope as contractors, and by them used in the construction of a city hall for the city of Groesbeck under a contract between said city and said contractors, upon whose bond for the faithful performance of said contract appellant Ætna Casualty & Surety Company became a surety. Numerous other parties who furnished labor and material intervened and sought judgment against said surety company and said contractors. The surety company made the city of Groesbeck a party, and by appropriate pleadings asked in case the parties who furnished labor and material recovered against it, that it have judgment for a like amount over against the city of Groesbeck. The case was tried before the court without a jury, and judgment rendered against the surety company and said contractors and in favor of the parties who furnished labor and material, amounting in the aggregate to $3,682.17, and judgment in favor of said surety company over against the city of Groesbeck for $3,280.92. The city of Groesbeck and the surety company have appealed, and present the record for review.

[1] Under its first proposition, appellant city of Groesbeck, which will hereafter be referred to as the city, contends that it and its contractors had the right under the provisions of said contract to change, without the knowledge or consent of the surety company, the provisions of the contract providing the method and manner of the payments by the city to the contractor of the contract price. The contract obligated the contractors to build said city hall according to plans and specifications, and obligated the city to pay the contractors the sum of $32,253, payable as the work progressed, as follows:

"The superintendent selected by the city shall each week make an estimate of the amount of work done and material placed on the ground during said week, and furnish a copy of same

to the contractor, and the city shall pay 80 per cent. of said estimate, retaining 20 per cent. of same, which retainage shall be held by the city until the final completion and acceptance of said building," etc.

The city failed to comply with the contract in respect to paying only 80 per cent. of the weekly estimates and retaining 20 per cent. until the work was completed and accepted, and seeks to justify its course in so doing under the following clause of the contract, which it claims authorized it and the contractors to change the provision of the contract providing for the 20 per cent. retainage:

"The owner reserves the right, by conferring with the superintending architect, to alter or modify the plans and this specification in any particular. and the architect shall be at liberty to make any deviation in the construction, detail or execution without in either case invalidating or rendering void the contract, and in case any such alteration shall increase or diminish the cost of doing the work, the amount to be allowed to the contractor or owner shall be such as may be equitable and just."

We think it is clear that the above provision has reference only to changes in the plans and specifications, and has no application to the provisions of the contract prescribing the mode and manner of the payment of the consideration. This assignment is overruled.

Under its second and third propositions, the city contends, in effect, that, having paid the full contract price, except $1,224.26, to the contractors or upon their order, without any notice of unpaid claims, and without any notice that the retainage provided for by the contract had been assigned to other parties, its only liability was for said $1,224.26. The appellant surety company also contends that, by reason of the city and contractors changing the method of payment without its knowledge or consent, it was released from its bond, not only as to the city, but also as to appellees, and that no judgment should have been rendered against it in favor of appellees for labor performed and material furnished. We will consider these contentions of both appellants together. The trial court filed findings of fact and conclusions of law, which are in no way challenged by either side. The material parts of such findings are, in substance, as follows: On November 16, 1926, Gregory & Hope and the city of Groesbeck entered into a contract for the erection of a city hall for the consideration, as recited in said contract, of $32,253. A bond was given to the city by said contractors, bearing the same date, in the sum of $32,253, guaranteeing the performance of said contract, upon which the Ætna Casualty & Surety Company was a surety. One of the conditions of said bond was that said contractors would pay all indebtedness that might be incurred by the contractors in carrying out said contract, as well as all

costs, including 15 per cent. attorney's fees, in enforcing the payment of all such indebtedness.

The bond provided, further, that the same was made for the use and benefit of all persons who might become entitled to liens under said contract according to the provisions of law in such cases made and provided, and might be sued upon by them as if executed to them in proper person. Extras agreed to by the city and the contractors under the provisions of the contract amounted to $1,579.07; thus increasing the contract price to $33,832.07. Payments were to be made as the work progresses as follows:

"The superintendent selected by the city shall each week make an estimate of the amount of work and material placed on the ground during said week and furnish a copy of the same to the contractor, and the city shall pay 80 per cent. of said estimates, retaining 20 per cent. of the same, which said retainage shall be held by the city until the final completion and acceptance of said building as hereinafter provided, at which time all retainage then so held by the city and not otherwise disposed of under the terms and conditions of this contract shall be paid to the contractors."

The last of May, 1926, the contractors abandoned the contract; the building then being virtually completed. C. H. Foote, engineer for the city, finished the job at a cost of $264.49. During the progress of the work, and up to the time of the abandonment of the contract by the contractors, the city had paid to them, upon estimates furnished by its superintendent, the sum of $29,318.51. The city had also paid the Citizens' National Bank, upon an order of the contractors, the sum of $2,006.66, same being money which the bank had loaned the contractors, making a total amount paid to the contractors and on their order of $31,325.17. After the abandonment of the contract by the contractors, in addition to the sum of $264.49 paid out by the city in completion of the work, said city also paid $278 for a vault door, and also two small judgments against the city for material furnished for said work, one for $406.80 and the other for $235.60, or a total thus paid by the city of $1,184.89. Eighty per cent. of the contract price of $33,832.07 was $27,065.60, so all sums paid by the city to the contractors or on their order in excess of said $27,065.60 were paid out of the 20 per cent. retainage, which, under the provisions of the contract, was to be held by the city until the final completion and acceptance of the work by the city. The paying out of this retainage by the city as above stated was without the knowledge or consent of the surety company, or any of the parties to this suit asserting claims for labor and material. The city in its answer admitted that it held $1,224.26 on account of said contract, which it tendered into court. The money used by the city in the erection of said city hall was

3 S.W.(2d)—57

the proceeds of the sale of bonds, which stipulated on their face that the same were to be used for no other purpose. The claims of the plaintiff and interveners proven up total with interest and 15 per cent. attorney's fees the sum of $3,682.17. The above findings of the court are adopted as the findings of this court.

[2, 3] If the building involved had been one against which a mechanic's lien could have been fixed, then the provisions of our mechanic's lien law would have been read into, and become a part of, the contract fixing the respective rights of the owner, the sureties on the contractor's bond, and those furnishing labor and material for said building, and, if the owner followed the provisions of said statutes in making payment to the contractor, that is, if the owner had paid to the contractor the full contract price in accordance with the terms of the contract, including the provisions of said statutes, there would have been no further liability on their part. Article 5461, and section 3 of article 5453, Revised Statutes 1925; also the following cases cited by appellant city: Lonergan et al. v. San Antonio Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803; First Baptist Church v. Carlton Lumber Co. (Tex. Civ. App.) 173 S. W. 1179; Thompson et al. v. Kleinman (Tex. Civ. App.) 259 S. W. 593. However, it is equally true, if the owner, after being served with notice of claims for labor or material due by the contractor, and at a time when the owner is indebted to the contractor, thus impounding said claims in his hands, as in garnishment, as provided by our mechanic's lien statutes, supra, should proceed to pay the amount of said claims to the contractor, the owner would become liable therefor, although he may have paid the entire contract price to the contractor. The payment by the owner of the entire contract price to to contractor relieves such owner of any further liability only where such payments have been made in accordance with the terms of the contract, but this is not true where the owner has breached his contract and paid out the full contract price in violation of the express provisions of the contract, whether his duties in regard to payment arise by virtue of the provisions of our mechanic's lien statutes or by express contract independently of said statutes. First Nat. Bank v. Lyon-Gray Lumber Co. (Tex. Civ. App.) 194 S. W. 1146.

[4] As above stated, the trial court found, and the uncontroverted evidence shows, that the city and contractors entered into a contract, by the terms of which the contractors obligated themselves to pay for all material and labor and construct a city hall for said city. The city obligated itself to pay said contractors for said work $33,832.07 as the work progressed, retaining 20 per cent. of each estimate until the work was finally completed and accepted by the city, as above stated. To guarantee the faithful performance of said contract, the surety company, as a surety, signed said bond. The contract between the contractors and the city of Groesbeck being one made with a municipality of the state for the erection of a city hall, a public improvement upon which a mechanic's lien could not be fixed, said bond was taken in pursuance to article 5160 et seq. of the Revised Statutes, and for the protection, not only of the city, but also for the benefit of those who furnished labor and material. The provision of the contract requiring the city to retain 20 per cent. of each estimate until the building was completed and ready for acceptance was an important part of said contract, and was for the benefit, not only of the city, but also for the benefit of the surety company. If the city had complied with this provision of its contract, this retainage would have been ample to pay all claims for labor and material. But, by reason of the city and the contractors, without any notice to appellant surety company, changing the method and manner of payment, and paying to the contractors before said building was completed all of said retainage, except $1,224.26, and leaving a large amount for labor and material unpaid, the appellant surety company, as to the city, was relieved from all liability on its bond. Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554, and cases cited.

[5] But, where the bond names the materialmen and laborers as obligees, and is conditioned for the payment of claims for labor performed and material furnished, as in this case, the sureties are not discharged from liability to persons furnishing labor and material by reason of the owner having made payments in violation of the contract secured by such bond, unless they knew of such violation at the time of furnishing the material and performing the labor. As the record shows appellees had no such knowledge at the time they performed labor and furnished material, the appellant surety company was liable on its bond as to appellees. Williams et al. v. Baldwin et al. (Tex. Com. App.) 228 S. W. 554; Southern Surety Co. v. Nalle & Co. et al. (Tex. Com. App.) 242 S. W. 197; United States Fidelity & Guaranty Co. v. Smith Lumber Co. (Tex. Civ. App.) 290 S. W. 307; Thompson v. Kleinman (Tex. Civ. App.) 259 S. W. 593; United States, etc., v. National Surety Co. (C. C. A.) 92 F. 549; Equitable Surety Co. v. United States, etc., 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394. We think the case of Williams et al. v. Baldwin, supra, is clearly distinguishable from the case of Bullard et al. v. Norton et al., 107 Tex. 571, 182 S. W. 668, cited by appellant surety company as authority for its contention that it was released by reason of the appellant city's breach of its contract, not only from all lia-

bility to the city, but also from all liability to appellees who furnished material without any knowledge of such breach.

[6] The changes in the statute after the events involved in the Bullard Case took place, and before those in the Williams Case, required the holding in the latter. We think the trial court was correct in rendering judgment in favor of appellees against the contractors and the appellant surety company for the labor performed and material furnished by them. We think, also, as the failure of the appellant city to comply with the requirement to retain 20 per cent. of the estimates made as the work progressed, and hold same until said building was complete and ready for acceptance, resulted in the liability of the appellant surety company to appellees and the judgment in their favor against said appellant, that the trial court was correct in rendering judgment in favor of appellant surety company over against its coappellant, the city of Groesbeck. The fact that the contractors assigned the retainage to the surety company, and the fact the city had no knowledge of such assignment, and the further fact the city had no notice of unpaid claims for material and labor at the time it paid out the retainage, are all, as we view the record, unimportant. There is no contention that the surety company ever collected any part of this retainage. Said company is not claiming any rights in this case by reason of said assignment. The appellant city's rights were in no way affected by reason thereof. It was the duty of the city to hold the 20 per cent. retainage until the building was completed and accepted. If it had performed this duty, there would have been ample funds in its possession to pay all claims, but it paid to the contractors or on their order most of the retainage before the building was finished. The fact that the city did not know of unpaid bills at the time it violated its agreement by paying out said retainage was no justification for its so doing. We have considered all of the assignments of the appellant city of Groesbeck, and also appellant surety company's contention that it was not liable to appellees for labor and material furnished, and, finding no error, overrule said contentions of both appellants.

[7] Under its second assignment, the appellant surety company contends, in effect, that the trial court erred in allowing the city credit upon the amount recoverable from it by the surety company for the amount of two judgments recovered against the city and by it paid. The record discloses that, after Gregory & Hope, contractors, abandoned the work, the Central Sanitary Manufacturing Company sued said contractors for $406.80, and W. E. Roberts also sued said contractors for $235.60; that in each of said cases a writ of garnishment was sued out and served on the city as garnishee; and that judgment was rendered in each of said cases against the city as garnishee for the amount sued for, which judgments the city paid. Said amounts were for material purchased by Gregory & Hope, contractors, which was used by them in said building. These two judgments for $406.80 and $235.60, rendered against the city as garnishee of the contractors, being for material purchased and used by the contractors in said building, were claims for which the surety company was, under its bond, liable. As we view the question here involved, it is not necessary for us to decide whether or not said claims were subject to garnishment. A court of competent jurisdiction adjudicated said claims to be just and correct. There is no contention but that said claims were of that class for which the surety company was liable under its bond. If the garnishment process impounding the amount of said claims in the possession of the city was void, such fact did not affect the liability of the surety company for the amount of said claims. The city paid same, and it is immaterial to the surety company whether such payment was made by the city direct to the parties who furnished said material or paid to said parties through, or by means of, an erroneous garnishment proceeding. The surety company being liable for said claims, and the city having paid same out of the 20 per cent. retainage, the city was entitled to credit upon the amount the surety company would otherwise have been entitled to recover of the city.

If the two claims above referred to, aggregating $642.40, had not been paid by the city, then the amount recoverable against the surety company, and by it recoverable over against the city, would have been just $642.40 more than each of said parties did recover, so the court was correct in its conclusion of law that the city was entitled to credit for these two items upon the amount otherwise recoverable by the surety company against the city. The trial court, in arriving at the amount of recovery by the surety company over against the city, added together the items of $1,224.26, the balance of the 20 per cent. retainage admitted by the city to be on hand, and $2,006.66, which the court found the city paid, not on any estimate, but on an order by the contractors, to the Citizens' National Bank for borrowed money, making $3,230.92. There is no complaint of this manner of arriving at the amount of the surety company's recovery. The court did not credit the $642.40 on this recovery, but only refused to permit the surety company to recover the additional amount of said two judgments, aggregating $642.40, or a sufficient amount thereof to make the recovery by the surety company against the city the same as the recovery by the appellees against the surety company. The trial court found that all items paid by the city out of said 20

per cent. retainage were for labor performed on, or material furnished for, said building, except the $2,006.66 paid to the bank, and so were claims for which the surety company would have been liable if the city had not paid same. The above finding is in no way challenged. We overrule the above contention of the surety company, and affirm the judgment of the trial court in its entirety as to all parties.